**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

2012 JUL 24  PM 4: 04

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

ROBERT COLLIER, On Behalf of Himself and
All Others Similarly Situated,

               Plaintiff,

vs.

BRIGHTPOINT, INC., JERRE L. STEAD,
ELIZA HERMANN, ROBERT J. LAIKIN,
JOHN F. LEVY, CYNTHIA L. LUCCHESE,
RICHARD W. ROEDEL, MICHAEL L.
SMITH, KARI-PEKKA WILSKA, INGRAM
MICRO INC., and BEACON SUB, INC.,

               Defendants.

Civil Action No.

**CLASS ACTION COMPLAINT FOR
VIOLATION OF SECTIONS 14(a) AND
(e) AND 20(a) OF THE SECURITIES
EXCHANGE ACT OF 1934**

**Complaint—Class Action**

**Demand for Jury Trial**

# 1:12 -cv- 1016 TWP -DKL

Plaintiff Robert Collier ("Plaintiff"), by his attorneys, for his class action complaint against defendants, alleges upon information and belief, except for paragraph 9 hereof, which is alleged upon knowledge as follows:

1.    This is a class action brought by Plaintiff on behalf of common stockholders of BrightPoint, Inc. ("BrightPoint" or the "Company") for violations for Section 14 and 20(a) in connection with the proposed acquisition of the publicly-owned shares of BrightPoint's common stock by Ingram Micro Inc. ("Ingram") through its affiliated entity, Beacon Sub, Inc. (Merger Sub), as detailed herein (the "Proposed Transaction").

2.    On July 2, 2012, BrightPoint announced that the Company had entered into a definitive Agreement and Plan of Merger, dated June 29, 2012 ("Agreement") under which affiliates of Ingram will acquire all of the outstanding stock of BrightPoint, in a transaction valued at approximately $840 million, including the assumption of BrightPoint's outstanding debt. The announcement stated that the Proposed Transaction is expected to close before the end of the year.

3. Under the terms of the Agreement, stockholders will receive $9.00 cash per share for all outstanding shares of the Company's common stock. Ingram has obtained a commitment for a $300 million debt facility from Morgan Stanley Senior Funding, Inc.

4. On July 19, 2012, BrightPoint filed its preliminary Schedule 14A ("Proxy Statement") with the Securities and Exchange Commission ("SEC") which once declared effective, will solicit Company shareholders to vote to approve the Proposed Transaction. However, the Proxy Statement is replete with material omissions and misstatements.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from taking any steps to consummate the Proposed Transaction due to the Individual Defendants' violations of Sections 14 and 20(a).

## JURISDICTION AND VENUE

6. This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C §1331 in that plaintiff's claims arise in part under the Constitution and laws of the United States, including the Exchange Act [15 U.S.C. §78aa] and 28 U.S.C. §1331. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and the defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. Given that the Proposed Transaction is valued at approximately $ 840 million, the injunctive relief sought herein will exceed a sum or value of $75,000. This action is not a collusive one to confer jurisdiction on this Court.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because BrightPoint is incorporated in Indiana and is therefore a resident of this District.

## PARTIES

9.   Plaintiff Robert Collier is and has been at all relevant times the owner of the common stock of the Company and is a resident of New York.

10.   Defendant BrightPoint is an Indiana corporation that was formed as Wholesale Cellular U.S.A., Inc. in 1989 with its principal headquarters at 7635 Interactive Way, Suite 200 Indianapolis, Indiana 46278. BrightPoint is a global leader in providing device lifecycle services to the wireless and high-tech industries. In 2011, BrightPoint handled more than 112 million wireless devices globally. BrightPoint's 5 key service areas – Plan, Market, Customize, Move, Recover, offer over 110 innovative services, such as distribution channel management, procurement, inventory management, reverse logistics and repair services, software loading, kitting and customized packaging, fulfillment, product customization, eBusiness solutions, and other outsourced services that integrate seamlessly with its customers' IT systems and operations. BrightPoint has more than 4,000 employees, as well as a significant number of temporary staff, and a global footprint covering more than 35 countries, including 13 Latin American countries through its investment in Intcomex, Inc.

11.   Defendant Jerre L. Stead ("Stead") has been a director of the Company since June 2000. Stead currently serves as the Company's lead independent director and is a member of the Compensation and Human Resources Committee. Stead also serves as chairman of the Corporate Governance and Nominating Committee ("CGN Committee").

12.   Defendant Eliza Hermann ("Hermann") has been a director since January 2003, and is also member of the Compensation Committee. From 2004 until 2011, Hermann was chair of the Compensation Committee and a member of the  CGN Committee.

3

13.     Defendant Robert J. Laikin ("Laikin") founded BrightPoint and has served as a director since the Company's inception in August 1989 and serves on its Strategy Committee. Laikin has been Chairman of the Board and Chief Executive Officer of BrightPoint since January 1994. From June 1992 until September 1996, Laikin was President of BrightPoint. Laikin was Vice President and Treasurer of BrightPoint from August 1989 until May 1992.

14.     Defendant John F. Levy ("Levy") has been a director of the Company since September 2010 and is also a member of the Audit Committee.

15.     Defendant Cynthia L Lucchese ("Lucchese") has served as a director since August 2009 and is chairperson of BrightPoint's Audit Committee.

16.     Defendant Richard W. Roedel ("Roedel") has been a director of the Company since October 2002. Roedel has served as chairman of the Compensation Committee since October 2011 and he currently serves as a member of the CGN Committee. From 2002 until 2011, Roedel was chairman of the Audit Committe.

17.     Defendant Michael L. Smith ("Smith") has been a director of the Company since May 2011 and also serves on the Audit Committee.

18.     Defendant Kari-Pekka Wilska ("Wilska") has been a director since November 2005 and also serves as chairperson of the Company's Strategy Committee.

19.     The defendants identified in ¶¶11-18 are referred to herein as the "Individual Defendants."

20.     Defendant Ingram is the world's largest technology distributor. Ingram has local sales offices and/or representatives in 26 countries, 105 distribution centers worldwide and serving more than 190,000 resellers in approximately 145 countries. Ingram maintains its principal executive offices at 1600 E. St. Andrew Place, Santa Ana, CA 92705.

21.     Defendant Beacon Sub ("Merger Sub") is an Indiana Company and is a direct wholly owned subsidiary of Ingram.

22.     Defendants Ingram and Beacon Sub, Inc. are collectively referred to herein as "Ingram".

## CLASS REPRESENTATION ALLEGATIONS

23.     Plaintiff brings this action on his own behalf and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all stockholders of the Company (except the defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the defendants) and their successors in interest, who are or will be threatened with injury arising from defendants' actions as more fully described herein (the "Class").

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable.  As of June 28, 2012 the Company had 68,792,074 shares of common stock outstanding, owned by thousands of shareholders located throughout the country.

26.     There are questions of law and fact which are common to the Class including, *inter alia*, the following:  (a) whether defendants have breached their fiduciary and other common law duties owed by them to Plaintiff and the members of the Class; (b) whether defendants have failed to disclose material information to BrightPoint's common stockholders; and (c) whether the Class is entitled to injunctive relief or damages as a result of the wrongful conduct committed by defendants.

27.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  The claims of the Plaintiff are typical of the

claims of other members of the Class as set forth in Rule 23 and Plaintiff has the same interests as the other members the Class. Plaintiff will fairly and adequately represent the Class.

28.     Plaintiff envisions no unusual difficulty in the management of this action.

29.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members or substantially impair or impede their ability to protect their interests.

30.     Defendants have acted in a manner, which affects Plaintiff and all members of the Class, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Background

31.     BrightPoint is a global leader in providing device lifecycle services to the wireless and high-tech industries. In 2011, BrightPoint handled more than 112 million wireless devices globally. BrightPoint's 5 key service areas – Plan, Market, Customize, Move, Recover, offer over 110 innovative services, such as distribution channel management, procurement, inventory management, reverse logistics and repair services, software loading, kitting and customized packaging, fulfillment, product customization, eBusiness solutions, and other outsourced services that integrate seamlessly with its customers' IT systems and operations. BrightPoint has more than 4,000 employees, as well as a significant number of temporary staff, and a global footprint covering more than 35 countries, including 13 Latin American countries through its investment in Intcomex, Inc.

**The Proposed Transaction**

32.    On July 2, 2012, BrightPoint issued a press release which stated in relevant part:

Ingram Micro Inc. (NYSE: IM), the world's largest technology distributor and supply-chain services provider, and Brightpoint, Inc. ("BrightPoint") (Nasdaq: CELL), a global leader in providing device lifecycle services to the wireless industry, announced today they have entered into a definitive agreement under which, subject to customary closing conditions, Ingram Micro will acquire all of the outstanding shares of BrightPoint common stock for $9.00 per share in cash, a 66 percent premium to BrightPoint's closing stock price on June 29, 2012, and a 35 percent premium to the 90-day average trading price. The transaction is valued at approximately $840 million, including the value of approximately $190 million of BrightPoint's estimated debt (net of cash), as of June 30, 2012.

The complementary combination of Ingram Micro with BrightPoint will create a leading global provider of device lifecycle services and solutions for the mobility industry. Together, Ingram Micro and BrightPoint will have tremendous customer reach and deep relationships with key vendors, network operators and mobile virtual network operators. The combined company will have an expanded global geographic footprint and customer base in the rapidly growing and strategically important mobility market.

33.    The release added that Mark Howell (Americas), Bruce Thomlinson (APAC) and Anurag Gupta (EMEA) – BrightPoint's existing Regional Presidents – and Vincent Donargo, BrightPoint's Chief Financial Officer, committed to senior roles within the new organization. In addition, Defendant Laikin will serve in a senior advisory role to Alain Monié, Ingram's President and Chief Operating Officer. In connection with Laikin's continued employment after the close of the Proposed Transaction, he entered into an amendment to his employment agreement to persuade him to remain with the Company, which includes a cash payment of $9 million (less the amounts payable for the vesting and payment of equity awards under the Merger Agreement).    However, the Proxy Statement does not disclose when those discussions commenced between Laikin and other members of management and Ingram Micro, which is particularly critical given that Laikin was the primary negotiator of the Proposed Transaction for Brightpoint.

7

34.     While the Proposed Transaction may provide substantial benefits to Ingram, management, vendors and suppliers, the consideration offered to BrightPoint's stockholders in the Proposed Transaction is unfair and inadequate because, among other things, the intrinsic value of BrightPoint's common stock is materially in excess of the amount offered for those securities in the Proposed Transaction given the Company's prospects for future growth and earnings.

35.     Moreover, while the Proposed Transaction appears to provide a premium over BrightPoint's June 29, 2012 closing share price, it fails to consider the Company's recent success and potential future growth. It appears to overvalue short term losses of the Company. Less than five months earlier, BrightPoint's stock hit a 52-week high of $12.05 before closing at $11.99.

36.     The Company's short term losses were seemingly fueled by the loss of one of its logistic services customers, as announced in a press release by the Company on February, 21 2012.

37.     However, BrightPoint was poised to rebound. It has since renewed service agreements with major customers Sprint United Management Company and MetroPCS while also announcing a servicing agreement with FreedomPop, which is funded by Skype Technologies SA founder Niklas Zennstrom.

38.     Further frustrating the possibility of finding a superior proposal was the fact that the Company issued a press release announcing preliminary estimates of its financial results for the second quarter of 2012 on the same day that it announced plans to enter into the Merger Agreement with Ingram. The announcement of the Proposed Transaction effectively placed a cap on the amount BrightPoint could expect to receive for its shares before the market had a

legitimate opportunity to analyze and respond to its improving agreements and current financial condition.

39.     The Proposed Transaction comes at a time when the Company's stock price is undervalued following short term losses, but its prospects for growth and increased revenue are likely increasing.  As a result of the Proposed Transaction, the Company's shareholders are provided inadequate information with respect to critical aspects of the negotiation process.

40.     Furthermore, as part of the Merger Agreement, the Individual Defendants agreed to onerous and preclusive deal protection devices that operate to ensure that no competing offers will emerge for the Company.

41.     The Proposed Transaction provides for a "Termination Fee" of $26,000,000 to be paid in cash if the Agreement is terminated by the Company or by Ingram pursuant to the terms of the Merger Agreement, including in the event that Company decides to pursue a superior offer.

42.     The Termination Fee amounts to approximately 3.1% of the equity value of the deal and essentially requires that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer. It is thus unlikely that any such superior offer would emerge.

43.     Individual Defendants are additionally impeding the possibility that the Company will pursue a superior proposal with the inclusion of a "No Solicitation" provision within the Agreement. The provision prohibits the Company and any of its representatives from initiating, soliciting or knowingly encouraging any inquiries that constitute an acquisition proposal. It further requires the Company and any of its representatives to immediately cease all discussions

or negotiations with any person with respect to any acquisition proposal. This provision effectively forecloses the possibility that the Company would receive a superior bid.

44.     Ultimately, these preclusive deal protection devices  impede the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited alternative acquisition proposal that constitutes, or would reasonably be expected to constitute, a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

**The Materially False and Misleading Proxy Statement**

45.     On July 19, 2012, Defendants filed the Proxy Statement, which contains materially false and misleading information, including the following:

(a)     In recommending that shareholders vote to approve the Proposed Transaction, the Board and its financial advisor, Blackstone Advisory Partners L.P. ("Blackstone"), relied upon projected financial information prepared by BrightPoint management for the fiscal years ended December 31, 2012 through December 31, 2017 ("projections"). However, those projections have not been disclosed in the Proxy Statement, notwithstanding the fact that projections and the free cash flows derived therefrom, are the best assessment for shareholders to determine whether it makes sense to give up their ownership in the Company for cash;

(b)     The Proxy Statement fails to disclose  the  ratios and multiples observed by Blackstone for each of the companies in its Selected Companies Analysis, including the financial metrics and projections for these companies obtained from Capital IQ or the basis for the selection of the comparable companies and how they compared to BrightPoint;

(c)     The Proxy Statement fails to disclose in the Selected Companies Analysis the full range for 2012 estimated share price to earnings per share or any of the multiples based on last twelve month financials or next twelve month financials;

(d)     The Proxy Statement fails to disclose, in Blackstone's Illustrative Stand-Alone Discounted Cash Flow Analysis ("DCF"), how Blackstone treated stock based compensation, the manner in which any net operating losses ("NOLs") were treated, and whether Blackstone used a mid-year convention, or end-of-year convention in the DCF;

(e)     The Proxy Statement fails to disclose in the DCF the growth rate in perpetuity the exit multiple of 4.0x to 6.0x LTM EBITDA represents;

(f)     The Proxy Statement fails to disclose the data utilized by Blackstone derived from various sources for its Selected Precedent Transactions Analysis, from which Blackstone derived multiples for each of the selected transactions, the basis for the selection of these transactions comparables or what the observed transaction value to last twelve months revenue ("LTM") as of March 31, 2012 was for each such transaction;

(g)     The Proxy Statement does not disclose in Blackstone's Illustrative Premiums Paid Analysis what values were observed if only the 14 selected precedent transactions were used;

(h)     The financial compensation to be earned by Blackstone has not been disclosed in the Proxy Statement, which makes it impossible for BrightPoint shareholders to determine how much weight to place on Blackstone's analyses and recommendation, particularly in light of the fact that the majority of Blackstone's compensation will be dependent upon the Proposed Transaction being effectuated;

11

(i)     The Proxy Statement fails to disclose when BrightPoint management, including defendant Laikin, began discussing with Ingram Micro the possibility of remaining with the Company after the close of the Proposed Transaction; and

(j)     Despite the fact that BrightPoint received expressions of interest from other entities described as Party A, Party C and Party D in the Proxy Statement, the Proxy Statement fails to disclose why BrightPoint felt the need to pursue a transaction at an accelerated pace, to the exclusion of these other expressions of interest.

46.     Absent this material information, Plaintiff and other BrightPoint shareholders will not have all the necessary information to make a decision whether to vote their shares in favor of the Proposed Transaction.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## FIRST CAUSE OF ACTION

**On Behalf of Plaintiff and the Class for Violations of**
**Section 14(a) and (e) of the Exchange Act**
**(Against the Company and the Individual Defendants)**

47.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual and on behalf of all BrightPoint shareholders.

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     Defendants have issued the Proxy Statement with the intention of soliciting shareholder support for the Proposed Transaction.

50.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement

which, at the time an in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

51.     Specifically, the Proxy Statement violates Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render it non-misleading.

52.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  As a direct and proximate result of Defendants' conduct, Plaintiff and other BrightPoint shareholders will be irreparably harmed.

## SECOND CAUSE OF ACTION

**On Behalf of Plaintiff and the Class for Violations of Section 20(a) of the Exchange Act
(Against the Individual Defendants)**

53.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual and on behalf of all other BrightPoint shareholders.

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     The Individual Defendants acted as controlling persons of BrightPoint within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of BrightPoint, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

58.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct

and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

61.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against defendants as follows:

Declaring this action to be a proper class action and certifying Plaintiff as class representative and Plaintiff's counsel as class counsel;


A.      Declaring this action to be a proper class action and certifying Plaintiff as class representative and Plaintiff's counsel as class counsel;

B.      Ordering Defendants to correct the materially misleading Proxy Statement;

C.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof; and

D.      Granting such other and further relief as the Court deems just and proper.


## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  July 24, 2012                              Respectfully submitted,

                                        PRICE WAICUKAUSKI & RILEY, LLC


                                        Henry J.Price, Atty. No. 5822-49
                                        hprice@price-law.com
                                        Carol Nemeth Joven, Atty. No. 18091-53A
                                        cnemeth@price-law.com
                                        The Hammond Block Building
                                        301 Massachusetts Avenue
                                        Indianapolis, IN 46204
                                        (317) 633-8787

15

*Of Counsel:*

**FARUQI & FARUQI, LLP**
Juan E. Monteverde
jmonteverde@faruqilaw.com
Shane Rowley
Srowley@faruqilaw.com
www.faruqilaw.com
369 Lexington Avenue, 10th Floor
New York, NY 10017
Tel: (212) 983-9330
Fax: (212) 983-9331

*Attorneys for Plaintiff*