**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| ROBERT COLLIER, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BRIGHTPOINT, JERRE L. STEAD, ELIZA HERMANN, ROBERT J. LAIKIN, JOHN F. LEVY, CYNTHIA L. LUCCHESE, RICHARD W. ROEDEL, MICHAEL L. SMITH and KARI-PEKKA WILSKA,<br><br>Defendants. | Civil Action No. 1:12-cv-1016 (TWP)(DKL) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR (1) FINAL APPROVAL OF SETTLEMENT; (2) CERTIFICATION OF SETTLEMENT CLASS; AND (3) AWARD OF ATTORNEYS' FEES AND EXPENSES**

# TABLE OF CONTENTS

I. FACTUAL AND PROCEDURAL BACKGROUND.................................................... 1

A. Terms of Settlement........................................................................ 6

B. The Supplemental Disclosures............................................................. 6

C. Fee and Expense Award.................................................................... 7

II. ARGUMENT....................................................................................... 8

A. The Proposed Settlement is Fair, Reasonable and Adequate and Should Be Approved by the Court........................................................................ 8

1. Overview of the Class Action Settlement Approval Process...................... 8

2. Applicable Legal Standard for the Final Approval of the Settlement ...... 10

a) The Relative Strength of the Plaintiffs' Case on the Merits Weighed Against the Value of the Settlement Achieved............. 12

b) The Benefits Achieved by the Settlement.................................... 13

c) Likelihood of Success, Complexity, Expense and Likely Duration of Litigation ............................................................. 14

d) The Presence of Collusion in Achieving the Settlement ............. 16

e) The Stage of the Proceedings and Amount of Discovery Completed........................................................................... 17

f) Opinions of Competent Counsel................................................. 19

g) The Amount of Opposition Expressed by Those Affected by the Settlement........................................................................ 20

B. The Conditionally-Certified Class Should Be Finally Certified.......................... 20

1. The Class is Sufficiently Numerous ...................................................... 21

2. There are Common Questions of Law And Fact .................................... 21

3. Plaintiffs' Claims are Typical of Those of the Class ............................... 22

4. Plaintiffs And Their Counsel are Adequate ............................................ 23

5. Certification of the Class Guards Against Inconsistent Rulings and the Injunctive Relief Applied Generally to the Class........................ 25

C. The Court Should Approve the Fee And Expense Award to Plaintiffs' Counsel ........ 26

1. The Value of the Services on an Hourly Basis ........ 29

2. The Novelty and Difficulty of the Questions Involved, and the Skill Requisite to Perform the Legal Service Properly ........ 29

3. The Fee Customarily Charged in the Locality for Similar Legal Services ........ 30

4. The Results Obtained for the Class ........ 31

5. The Experience, Reputation and Ability of the Lawyers Performing fhe Services ........ 32

6. The Contingent Nature of the Fee ........ 33

III. CONCLUSION ........ 34

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ... 21

*Arenson v. Whitehall Convalescent and Nursing Home, Inc.*,
164 F.R.D. 659 (N.D. Ill. 1996) ... 22, 23

*Armstrong v. Bd. of Sch. Dirs.*,
616 F.2d 305 (7th Cir. 1980), *overruled by Felzen v. Andreas*,
134 F.3d 873 (7th Cir. Ill. 1998) ... 8, 9, 11, 12, 13, 18, 20

*Arnold v. Society for Sav. Bancorp., Inc.*,
650 A.2d 1270 (Del. 1994) ... 14

*Behrens v. Wometco Enter., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988) ... 29

*Blum v. Stenson*,
465 U.S. 886 (1984) ... 30

*Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, PA.*,
778 F.2d 890 (1st Cir. 1985) ... 29

*Brent v. Midland Funding, LLC*,
No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763
(N.D. Ohio Sept. 1, 2011) ... 14, 15

*Butler v. Am. Cable & Tel., LLC*,
No. 09 CV 5336, 2011 U.S. Dist. LEXIS 115506
(N.D. Ill. Oct. 6, 2011) ... 27

*Chrysler Corp. v. Dann*,
223 A.2d 384 (Del. 1966) ... 34

*City of Greenville v. Syngenta Crop Prot., Inc.*,
No. 3:10-cv-00188-JPG-PMF, 2012 U.S. Dist. LEXIS 151819
(S.D. Ill. Oct. 23, 2012) ... 28

*Conley v. Sears, Roebuck & Co.*,
222 B.R. 181 (D. Mass. 1998) ... 29

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ... 27, 28

*De La Fuente v. Stokely-Van Camp, Inc.*,
713 F.2d 225 (7th Cir. 1983) .......... 23

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).......... 16

*EEOC v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) .......... 11, 12

*EEOC v. Polycon Indus., Inc.*,
No. 2:09-CV-141, 2011 U.S. Dist. LEXIS 117534 (N.D. Ind. Oct. 11, 2011) .......... 20

*Fischbein v. First Chicago Corp.*,
No. 97-CV-1989, 1998 U.S. Dist. LEXIS 2701 (N.D. Ill. Feb. 27, 1998) .......... 19

*Fournier v. PFS Invs., Inc.*,
997 F. Supp. 828 (E.D. Mich. 1998) .......... 29

*Franklin Balance Sheet Inv. Fund v. Crowley*,
C.A. No. 888-VCP, 2007 Del. Ch. LEXIS 133 (Del. Ch. Aug. 30, 2007) .......... 34

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) .......... 33

*Gaspar v. Linvatec Corp.*,
167 F.R.D. 51 (N.D. Ill. 1996).......... 22, 23

*GE Capital Corp. v. Lease Resolution Corp.*,
128 F.3d 1074 (7th Cir. 1997) .......... 12

*Gen. Tel. Co. of the S.W. v. Falcon*,
457 U.S. 147 (1982).......... 22

*Globis Capital Partners v. Safenet*,
No. 2772-VCS (Del. Ch. Dec. 20, 2007).......... 34

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) .......... 27, 28, 29

*Heastie v. Cmty. Bank*,
125 F.R.D. 669 (N.D. Ill. 1989).......... 23

*Hefty v. All Other Members of the Certified Settlement Class*,
680 N.E.2d 843 (Ind. 1997) .......... 9, 14

*Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill.*,
988 F. Supp. 1130 (N.D. Ill. 1997).......... 8, 12, 19

*Hubbard v. M.R.S. Assocs, Inc.*,
No. 1:05-cv-0218-DFH-TAB, 2008 U.S. Dist. LEXIS 102983
(S.D. Ind. 12-19-2008)........ 24

*In re Beverly Hills Fire Litig.*,
639 F. Supp. 915 (E.D. Ky. 1986) ........ 29

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ........ 33

*In re Fine Host Corp. Secs. Litig*,
No. MDL 1241, 2000 U.S. Dist. LEXIS 19367 (D. Conn. Nov. 8, 2000) ........ 29

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)........ 29

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000)........ 17

*In re Netsmart Techs., Inc. S'holders Litig.*,
924 A.2d 171 (Del. Ch. 2007) ........ 18

*In re Plains Res. Inc. S'holders Litig.*,
C.A. No. 071-N, 2005 Del. Ch. LEXIS 12 (Del. Ch. Feb. 4, 2005)........ 34

*In re Pub. Serv. Co. Sec. Litig.*,
125 F.R.D. 480 (S.D. Ind. 1988) ........ 28

*In re Pure Res. Inc., S'holders Litig.*,
808 A.2d 421 (Del. Ch. 2002) ........ 14

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ........ 27

*In re Talley Indus., Inc. S'holders Litig.*,
C.A. No. 15961, 1998 Del. Ch. LEXIS 53 (Del. Ch. Apr. 9, 1998)........ 19

*In re Telectronics Pacing Sys.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ........ 20

*In re Vitalink Commc'ns Corp. S'holders Litig.*,
No. 12085, 1991 Del. Ch. LEXIS 195 (Del. Ch. Nov. 8, 1991)........ 34

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ........ 9, 11, 12, 13, 15, 20

*Johns v. DeLeonardis*,
145 F.R.D. 480 (N.D. Ill. 1992)........ 22

*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) .................................................................................... 22

*Langendorf v. Conseco Senior Health Ins. Co.*,
No. 08-CV-39142009, 2009 U.S. Dist. LEXIS 131289
(N.D. Ill. Nov. 18, 2009) ....................................................................................... 16, 27

*Lazy Oil Co. v. Witco Corp.*,
95 F. Supp. 2d 290 (W.D. Pa. 1997)........................................................................... 15

*Lonardo v. Travelers Indem. Co.*,
706 F. Supp. 2d 766 (N.D. Ohio 2010) ..................................................................... 16

*Mars Steel Corp. v. Cont'l Illinois Nat'l Bank & Trust Co.*,
834 F.2d 677 (7th Cir. 1987) .................................................................................... 17

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y. 1984) ........................................................................... 15

*Missouri v. Jenkins*,
491 U.S. 274 (1989)................................................................................................... 28

*Morris v. Risk Mgmt. Alts., Inc.*,
203 F.R.D. 336 (N.D. Ill. 2001)................................................................................. 23

*Nelson v. IPALCO Enters.*,
No. IP 02-477-C H/K, 2003 U.S. Dist. LEXIS 26392
(S.D. Ind. Sept. 30, 2003) ............................................................................... 21, 23, 24

*Ormond v. Anthem, Inc.*,
No. 1:05-cv-1908-DFH-TAB, 2009 U.S. Dist. LEXIS 90837
(S.D. Ind. Sept. 29, 2009) .......................................................................................... 24

*Peterson v. H&R Block Tax Servs.*,
174 F.R.D. 78 (N.D. Ill. 1997)................................................................................... 21

*Rawlings v. Prudential-Bache Props., Inc.*,
9 F.3d 513 (6th Cir. 1993) ......................................................................................... 29

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 6, 2001) .............................. 17

*Riordan v. Smith Barney*,
113 F.R.D. 60 (N.D. Ill. 1986)................................................................................... 21

*RMB Fasteners, Ltd. v. Heads & Threads Int'l, LLC*,
No. 11 CV 02071, 2012 U.S. Dist. LEXIS 14361 (N.D. Ill. Feb. 7, 2012).......................... 19

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) .......................................................................... 22, 23

*Rosenblatt v. Getty Oil Co.*,
493 A.2d 929 (Del. 1985) ................................................................................. 19

*Scholes v. Stone, McGuire & Benjamin*,
143 F.R.D. 181 (N.D. Ill. 1992) ......................................................................... 23

*Seinfeld v. Coker*,
847 A.2d 330 (Del. Ch. 2000) ............................................................................ 34

*Stoll v. Kraft Foods Global, Inc.*,
No. 1:09-CV-0364-TWP-DML, 2010 U.S. Dist. LEXIS ............................................ 25, 26

*Strunk v. Martin*,
No. 1:10CV23 JD, 2011 U.S. Dist. LEXIS 23143 (N.D. Ind. Mar. 7, 2011) ........................ 25

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) .......................................................................... 12, 13

*TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) ....................................................................................... 16

*UAW v. GMC*,
497 F.3d 615 (6th Cir. 2007) ............................................................................ 15

*Uhl v. Thoroughbred Tech. & Telecomms. Inc.*,
No. IP 0-1232-C B/S, 2001 U.S. Dist. LEXIS 13115 (S.D. Ind. Aug. 28, 2001) ................. 26

*Wagner v. NutraSweet Co.*,
95 F.3d 527 (7th Cir. 1996) .............................................................................. 21

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
899 F. Supp. 1297 (D.N.J. 1995) ....................................................................... 29

*Wilfong v. Rent-A-Center*,
No. 00-680-DRH, 2002 U.S. Dist. LEXIS 28016 (S.D. Ill. 2002) ..................................... 30

**STATUTES**

Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711 *et seq* .......................................... 10

Fed. R. Civ. P. 23 .............................................................................. 1, 8, 24, 26, 27

Securities Exchange Act of 1934 §§ 14, 20(a) ........................................................... 2, 3

**OTHER AUTHORITIES**

4 Alba Conte, et al., *Newberg On Class Actions* § 11:41 (4th ed. 2002)...................................... 16

Manual for Complex Litigation – Fourth (Federal Judicial Center 2004)................................ 9, 11

Pursuant to Fed. R. Civ. P. 23(a), 23(b)(1) 23(b)(2), 23(e), and 23(h), Plaintiffs Robert Collier, Armand Rijken, and Mark Rifken ("Plaintiffs"), individually and on behalf of the Class conditionally certified by this Court's October 22, 2012 Scheduling Order and Order Preliminarily Approving Proposed Settlement (the "Preliminary Approval Order"), by and through counsel preliminarily appointed by this Court's October 22, 2012 Order ("Plaintiffs' Counsel") and pursuant to the Court's October 22, 2012 Order, respectfully submit this Memorandum of Law in support of their Motion seeking: (1) approval of the Settlement, pursuant to the Stipulation of Settlement filed with the Court on October 18, 2012 (the "Stipulation"); (2) final certification of the Class conditionally certified by the Preliminary Approval Order in connection with the proposed Settlement (the "Settlement") of this consolidated action (the "Action"); and (3) an award of attorneys' fees and expenses in the aggregate amount of $600,000 for the services that Plaintiffs' Counsel rendered in the successful prosecution and settlement of the Action (the "Fee and Expense Award").

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 29, 2012, BrightPoint, Inc. ("BrightPoint") entered into the merger agreement with Ingram Micro, Inc. ("Ingram Micro") and Beacon Sub, Inc. ("Merger Sub"), whereby, subject to, *inter alia*, a vote in favor of the merger by at least a majority of the outstanding shares of BrightPoint stock, Merger Sub would be merged with and into BrightPoint, with BrightPoint continuing as the surviving corporation and as a wholly owned subsidiary of Ingram Micro ("Merger Agreement"). Pursuant to the Merger Agreement, holders of BrightPoint common stock would be entitled to receive $9.00 in cash for each share of BrightPoint common stock they owned immediately prior to the effective time of the merger of Merger Sub with and into BrightPoint ("Merger"). *See* Exhibit 1, Declaration of Juan E. Monteverde In Support Of

Plaintiffs' Motion For (1) Final Approval Of Settlement; (2) Certification Of Settlement Class And (3) Award Of Attorneys' Fees And Expenses, ¶ 5.

On July 2, 2012, Ingram Micro and BrightPoint jointly issued a press release announcing that they had entered into the Merger Agreement. Approximately two weeks later, on July 19, 2012, BrightPoint filed with the U.S. Securities and Exchange Commission ("SEC") a preliminary proxy statement on Schedule 14A (the "Preliminary Proxy Statement") disclosing the BrightPoint board of directors' unanimous recommendation that BrightPoint shareholders vote for the approval of the Merger Agreement, and the basis upon which such recommendation was based. *Id.*, ¶ 6 and Exhibit A thereto.

On July 24, 2012, Robert Collier filed an action (the "*Collier* Action") against BrightPoint, Jerre L. Stead, Eliza Hermann, Robert J. Laikin, John F. Levy, Cynthia L. Lucchese, Richard W. Roedel, Michael L. Smith, Kari-Pekka Wilska, Ingram Micro and Beacon Sub (the "*Collier* Defendants") alleging that the Preliminary Proxy Statement failed to disclose material information pursuant to Sections 14 and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). On July 27, 2012, Plaintiff in the *Collier* Action filed a Motion for Expedited Discovery and to Set a Schedule for Plaintiff's Motion for Preliminary Injunction. *Id.*, ¶ 8.

On August 2, 2012, Armand Rijken and Mark Rifken filed an action (the "*Rijken* Action") against BrightPoint, Robert J. Laikin, Thomas J. Ridge, Jerre L. Stead, Kari-Pekka Wilska, Eliza Hermann, Cynthia L. Lucchese, John F. Levy, Richard W. Roedel and Michael L. Smith (the "*Rijken* Defendants" and, together with the *Collier* Defendants, "Defendants") alleging violations of Sections 14 and 20(a) of the Exchange Act, as well state law claims for breach of fiduciary duty, and aiding and abetting such breaches.

On August 9, 2012, Plaintiff in the *Collier* Action filed a Motion to Consolidate the *Rijken* Action with the *Collier* Action, which motion was granted on September 17, 2012 ("Action"). *Id.*, ¶ 9.

On August 10, 2012, BrightPoint filed a Motion to Dismiss the *Collier* Action. Thereafter, on August 20, 2012, BrightPoint filed a definitive proxy statement on Schedule 14A with the SEC in connection with the Proposed Merger (the "Definitive Proxy Statement"). In the Definitive Proxy Statement, Defendants made certain disclosures that the Action had identified and alleged as having been omitted from the Preliminary Proxy Statement, including forecasts of unlevered free cash flow for the second half of 2012 through 2017 which had been sought in the Action. *Id.*, ¶ 10 and Exhibit B thereto.

Counsel for Defendants and Plaintiffs' Counsel commenced discussions concerning the disclosures made in the Preliminary Proxy Statement and the Definitive Proxy Statement, and beginning on August 21, 2012, Defendants voluntarily provided certain non-public documents for review by Plaintiffs and Plaintiffs' Counsel. *Id.*, ¶ 11.

On August 22, 2012, plaintiff in the *Collier* Action filed an Amended Class Action Complaint ("Amended Complaint") for alleged violations of Sections 14(a) and 20(a) of the Exchange Act. The Amended Complaint alleged that BrightPoint and the Individual Defendants made material misstatements and/or omissions in the Preliminary Proxy and Definitive Proxy Statements in violation of the Exchange Act. The Amended Complaint sought to enjoin the process to effectuate the Merger or, if the Merger was consummated, to obtain rescissory damages and other relief on behalf of Plaintiffs and the then-proposed Class. *Id.*, ¶ 12.

Shortly thereafter, on August 24, 2012, Plaintiff in the *Collier* Action filed a Motion for a Preliminary Injunction seeking to enjoin the Merger and any shareholder vote thereon.

Approximately at the same time, counsel for the parties had a series of good faith and arm's length discussions about the proposed Merger, the disclosures that were contained in the Preliminary Proxy Statement but were still not included in the Definitive Proxy Statement, and the basis for a possible settlement of the Action. After consultation and arm's length negotiations with Plaintiffs' Counsel, BrightPoint agreed to make certain additional disclosures regarding the Merger (the "Supplemental Disclosures") through a current report on Form 8-K (the "8-K") to be filed with the SEC, and agreed that certain supplemental disclosures sought in the Action had been included in the Definitive Proxy (the "Proxy Disclosures") (collectively, with the Supplemental Disclosures, the "Disclosures"). *Id.*, ¶ 13.

Meanwhile, on September 4, 2012, these protracted arm's-length negotiations culminated in a Memorandum of Understanding ("MOU"), executed by the parties' counsel, which set forth the terms of the agreement in principle to resolve the Action.[1] *Id.*, ¶ 14.

The negotiated resolution was principally based on BrightPoint's agreement that certain additional disclosures regarding the Merger, particularly the analyses undertaken by Blackstone Advisory Partners, L.P. ("Blackstone"), a financial advisor retained by BrightPoint, would be included in the Form 8-K relative to the Merger. On September 6, 2012, BrightPoint filed the Form 8-K containing the Supplemental Disclosures to the Definitive Proxy.[2] *Id.*, ¶ 15 and Exhibit C thereto.

On September 19, 2012, the duly noticed special meeting of the shareholders of BrightPoint was held and 50,447,066 shares were represented in person or by proxy. The matters submitted to the shareholders and voted upon at this special shareholders meeting

[1]After agreement on the MOU, on September 12, 2012, the parties filed a Stipulation of Withdrawal of Pending Motions in the Action, which the Court approved on September 17, 2012.
[2]A true and correct copy of this Form 8-K is attached as Exhibit C to Monteverde Decl.

included approval of the Merger Agreement. The Merger Agreement was approved by the indicated votes: (1) For: 50,302,206; (2) Against: 122,345; and (3) Abstain: 22,515. *Id.*, ¶ 17.

Following the execution of the MOU and consummation of the Merger, Plaintiffs continued to conduct an investigation of the claims and allegations asserted in the Amended Complaint, as well as the underlying events and transactions relevant to those claims and allegations. In connection with their investigation, Plaintiffs' Counsel conducted additional discovery prior to executing the Stipulation. This additional discovery included (i) reviewing and analyzing the facts and circumstances relating to the claims asserted in the Action, as known by Plaintiffs and Plaintiffs' Counsel to date, including conducting discussions with counsel to BrightPoint; (ii) analyzing draft disclosures provided by BrightPoint, documents obtained through publicly available sources, applicable case law, and other authorities; (iii) conducting the interview of Robert J. Laikin, the founder, Chief Executive Officer and Chairman of BrightPoint at the time of the Merger and the deposition of Justin Aylward, a representative of Blackstone. *Id.*, ¶ 18.

On October 18, 2012, the parties executed the Stipulation and jointly moved for preliminary approval of the Settlement, to conditionally certify the proposed Class and to obtain Court approval of the form and method of the Notice to be disseminated to the Class. Attached to the Joint Motion [docket no. 53] was the Stipulation and proposed Notice. On October 22, 2012, the Court entered the Preliminary Approval Order. Among other things, the Preliminary Approval Order conditionally certified the Class[3] and approved the Class-wide Notice. The

[3]Pursuant to Rule 23(a), (b)(1) and (b)(2), the Court preliminarily certified the following non-opt-out Class for purposes of Settlement:

> Solely for purposes of the Settlement, the Action shall be preliminarily certified and maintained as a non-opt-out class action, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), on behalf of a class consisting of all record holders and beneficial owners of common stock of BrightPoint at any

Court also established a briefing schedule for final approval of the Settlement and scheduled the Final Approval hearing for January 30, 2013. *Id.*, ¶ 19.

**A. Terms of Settlement**

On the basis of all the information available to them, including publicly-available information, non-public information and the additional discovery as described herein, Plaintiffs' Counsel have determined that the Settlement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Class because it enabled the stockholders of BrightPoint to make a fully informed decision on whether to approve the Merger.[4] The consideration to the Class members for the Settlement is the inclusion in the Form 8-K of the Supplemental Disclosures regarding the Merger that were not included in the Preliminary Proxy or Definitive Proxy Statements. In exchange for the Disclosures, the Class agreed to release any and all claims relating to the Merger except for claims to enforce the Settlement. *See Id.*, ¶ 20.

While Plaintiffs and their counsel believe that the claims asserted in the Amended Complaint have legal merit, they also recognize that there are legal and factual defenses to their claims. Thus, under these circumstances, Plaintiffs and their counsel believe the Settlement is fair, reasonable, adequate and in the best interests of the Class. *Id.*, ¶ 21.

**B. The Supplemental Disclosures**

In addition to the valuable projected free cash flow included in the Definitive Proxy Statement, the Supplemental Disclosures provided by BrightPoint in the Form 8-K served to supplement the information contained in the Preliminary Proxy and Definitive Proxy Statements in several significant areas. First and foremost, BrightPoint disclosed the multiples for each

---

> time during the period beginning on and including March 16, 2012 through and including the date of the consummation of the Merger.

Preliminary Approval Order, ¶1.

[4] As the Company reported in its Form 8-K, filed with the SEC on September 19, 2012, over 50,302,206 eligible shares voted in favor of the Merger, while approximately 122,345 voted against the Transaction.

selected company in the *Selected Companies Analysis* prepared by Blackstone, which analysis was described on pages 39-41 of the Definitive Proxy Statement. These multiples enabled BrightPoint shareholders to assess whether these data points were reasonable and ultimately appropriate to value the Company, allowing shareholders to make a fully informed decision as to whether to vote in favor of the Merger. *Id.*, ¶ 22.

Further, BrightPoint amended the first paragraph on page 41 of the Definitive Proxy Statement describing Blackstone's *Illustrative Stand-Alone Discounted Cash Flow Analysis* by adding information about methods of calculating BrightPoint's free cash flows and information about adjustments made to BrightPoint's total enterprise value. This additional information was necessary for the shareholders to understand Blackstone's *Illustrative Stand-Alone Discounted Cash Flow Analysis*, and the range of values derived therefrom. *See Id.*, ¶ 23.

Finally, BrightPoint disclosed the multiples for each Transaction Value/LTM Revenue selected for the *Selected Precedent Transactions Analysis* done by Blackstone, which analysis was described on pages 41-42 of the Definitive Proxy Statement. These multiples were critically important to BrightPoint shareholders in valuing the Company and in making an informed decision as to whether to vote in favor of the Merger. *Id.*, ¶ 24.

**C. Fee and Expense Award**

Plaintiffs' Counsel engaged in vigorous negotiations with Defendants regarding the Disclosures, which culminated in the MOU on September 4, 2012. However, as noted above, it was only after the parties agreed upon the terms of the Settlement did they engage in discussions regarding attorneys' fees and expenses. Pursuant to those discussions, Defendants agreed not to oppose any such fee application up to an amount of $600,000 for Plaintiffs' Counsel's attorneys' fees and expenses. *See* Ex. D to Ex. 1, ¶ 16. This amount is separate from the benefit already conferred on the Class and does not affect the Class in any way. *Id.* at ¶ 17 ("Resolution of the

petition for an award of attorneys' fees and expenses shall not be a precondition to this Settlement or to the dismissal with prejudice of the Action."). This amount was negotiated at arm's length with Defendants ***only after*** agreement was reached by the parties concerning all other terms. *See* Ex. 1, ¶ 25.

## II. ARGUMENT

### A. The Proposed Settlement Is Fair, Reasonable and Adequate and Should Be Approved by the Court

#### 1. Overview Of The Class Action Settlement Approval Process

A class action may not be dismissed, compromised or settled without the Court's approval. *See* Fed. R. Civ. P. 23(e). "In general, courts look upon the settlement of lawsuits with favor because it promotes the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome." *Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997) (citing *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1971)). Settlement is particularly advantageous in complex class actions. *See id.* (citing *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312-13 (7th Cir. 1980) ("In the class action context in particular, there is an overriding public interest in favor of settlement."), *overruled by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. Ill. 1998)); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.") (citations omitted); *Armstrong*, 616 F.2d at 312-13 ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement . . . Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.") (citations omitted).

Procedurally, the parties that propose to resolve class action litigation through a class-wide settlement must obtain the Court's approval of the proposed settlement pursuant to a widely-accepted process described in the Manual for Complex Litigation – Fourth (Federal Judicial Center 2004) ("MCL 4th").

In summary, the steps in the class action approval process are:

> 1. Preliminary approval of the proposed settlement . . . (together with certification of the settlement class, where appropriate);
>
> 2. Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> 3. A "formal fairness hearing," or final approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

MCL 4th §§ 21.632-21.634; *see also Armstrong*, 616 F.2d at 314 (noting that district court's review of a class action settlement proposal involves (1) a preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval; (2) fairness hearing; and (3) notifying class members of the proposed settlement and the fairness hearing); *Hefty v. All Other Members of the Certified Settlement Clas*s, 680 N.E.2d 843, 851 (Ind. 1997) ("A trial court's approval of a class action settlement as fair is a two-step process: (1) a preliminary evaluation of the fairness of the settlement and (2) a formal fairness hearing where arguments for and against settlement are put forth.") (citing MCL 3d § 30.41 at 236-237).

Here, two of the three steps in the approval process have already been completed. By its Preliminary Approval Order, this Court preliminarily approved the Settlement, and thereby found the negotiated resolution sufficiently reasonable to justify class-wide notice and the scheduling of a formal fairness hearing. Equally important, having found that all the prerequisites for certification exist, the Court also granted provisional certification of the

proposed Class for purposes of effectuating the Settlement. In addition, the Court approved the form of Class Notice, thereby facilitating dissemination of Notice to the Class.

The Notice, which set forth the terms of the Settlement, the Class members' right to object to the Settlement and the date and time of the Final Approval hearing, was originally disseminated to Class members on November 16, 2012 but re-sent due to a typographical error to the same population on December 14, 2012. Defendants caused the Notice to be mailed, by United States Mail, first-class, postage pre-paid, to all Class members at their last known address appearing in the stock transfer records maintained by or on behalf of the Company. The Preliminary Approval Order also requested all record holders who were not also the beneficial owners of the BrightPoint shares held by them to forward the Notice to the beneficial owners. Defendants also caused notice of the proposed Settlement to be mailed by certified mail to the United States Attorney General and all State Attorneys General pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711 *et seq*. (the "CAFA Notice").

Following dissemination of the Notice, Plaintiffs' counsel was (and continue to be) available to members of the Class to respond to comments and answer questions. To date, no member of the Class has expressed any objection to the Settlement. *See* Ex. 1, ¶ 27.

The instant Motion concerns the final step in the approval process – the fairness hearing and final approval of the Settlement. At the fairness hearing, assuming compliance with the terms of the Preliminary Approval Order, Class Members will have an opportunity to present their comments and/or objections regarding the Settlement, and Plaintiffs' counsel will present argument supporting the fairness, adequacy and reasonableness of the Settlement.

### 2. Applicable Legal Standard for the Final Approval of the Settlement

When reviewing a proposed settlement of a class action, the Court must determine whether the settlement is "fair, reasonable, and adequate." *Armstrong*, 616 F.2d at 313; *see also*

*EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("The district court may not deny approval of a consent decree unless it is unfair, unreasonable, or inadequate.").[5] This inquiry is a "limited" one in that "[j]udges should not substitute their judgment as to optimal settlement terms for the judgment of the litigants and their counsel" and should stop short of the thorough investigation that they would undertake if they were actually trying the case and refrain from reaching conclusions upon issues that have not been fully litigated. *Armstrong*, 616 F.2d at 314-15. Further, in determining whether a settlement is fair, reasonable, and adequate, the court should view the settlement as a whole, rather than separately analyzing individual components of the settlement. *Id*. at 315 (citations omitted); *Isby*, 75 F.3d at 1199 (citations omitted).

The Seventh Circuit has identified several relevant (and potentially) interrelated substantive factors that courts should consider in deciding whether to grant final approval of a proposed class action settlement, including:

1. the relative strength of the plaintiffs' case on the merits weighed against the value of the settlement achieved;
2. the complexity, length, and expense of continued litigation;
3. the presence of collusion in achieving the settlement;
4. the stage of the proceedings and amount of discovery completed;
5. the opinion of competent counsel; and
6. the amount of opposition expressed by those affected by the settlement.

*Hiram Walker*, 768 F.2d at 888-889; *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997).[6] Not every factor will be relevant to every settlement, and a court certainly need not find every factor satisfied in order to approve the settlement; rather, this reasonableness inquiry is highly case-specific and individualized. *See, e.g.*, *Hiram Walker*, 768

[5] *See Manual for Complex Litigation (Fourth)* § 21.62 (2011) (explaining in context of Rule 23(e)(1)(C) that "Fairness calls for a comparative analysis of the treatment of class members *vis-a-vis* each other and *vis-a-vis* similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.").

[6] *See also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citing *Isby*, 75 F.3d at 1199 (same)); *Hispanics United*, 988 F. Supp. at 1150.

F.2d at 890 (describing the court's reasonableness inquiry as "equitable and subjective" in nature).

A district court's determination that a settlement is fair, reasonable, and adequate is given extraordinary deference. "Such deference is due the judgment of the district judge because of his familiarity with the litigants, the history of the litigation and the merits of the substantive claims asserted." *Armstrong*, 616 F.2d at 315 (citing *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 34 (3d Cir. 1971)). "[T]he trial judge is exposed to the litigants, and their strategies, positions, and proofs. He is aware of the expense and possible legal bars to success. Simply stated, he is on the firing line and can evaluate the action accordingly." *Id.* at 318 (citing *Ace Heating & Plumbing Co.*, 453 F.2d at 34). The district court must clearly set forth in the record its reasons for approving the settlement, but "the court's reasoning need not be so specific as to amount to a judgment on the merits." *Armstrong*, 616 F.2d at 315 (citing *Dawson v. Pastrick*, 600 F.2d 70, 75-76 (7th Cir. 1979); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974)).

As explained below, the weight of the relevant factors favors approval of the parties' settlement in this case.

#### a) The Relative Strength of the Plaintiffs' Case on the Merits Weighed Against the Value of the Settlement Achieved

The first factor, the benefits achieved by the settlement in light of the strength of the plaintiffs' case and the possible award if judgment were entered for the plaintiffs, is the most important criterion in determining whether a settlement is fair, reasonable, and adequate. *Synfuel Techs.*, 463 F.3d at 653 (citing *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)); *Isby*, 75 F.3d at 1199; *Armstrong*, 616 F.2d at 314, 322 (citations omitted). Closely related to the first factor are the complexity, length, and expense of further

litigation. *Armstrong*, 616 F.2d at 322. Together, these factors weigh the benefits of settlement, including the avoidance of further risk and expense, against the range of outcomes for plaintiffs after litigating the suit to completion. *See Synfuel Techs.*, 463 F.3d at 653 (parties must present evidence to enable the Court to evaluate the settlement in light of the possible outcomes after continued litigation). Both factors support approval of the Settlement in this case, as detailed below.

**b) The Benefits Achieved by the Settlement**

The Settlement secured the disclosure of additional material information not previously disclosed to shareholders. The Supplemental Disclosures were significant and material to shareholders, and essential to their ability to reach a fully and adequately informed decision regarding whether to vote in favor of the Transaction.

In particular, the Supplemental Disclosures included information necessary for the shareholders to understand analyses conducted by Blackstone. Specifically, with respect to the *Selected Companies Analysis*, the Supplemental Disclosures included individual multiples for each company selected for the analysis. With respect to *Illustrative Stand-Alone Discounted Cash Flow Analysis*, the Supplemental Disclosures clarified the methods of calculating BrightPoint's free cash flows and adjustments made to BrightPoint's total enterprise value. Finally, the Supplemental Disclosures provided the multiples of each Transaction Value/LTM Revenue for each transaction selected for *Selected Precedent Transactions Analysis*. It is fundamental that shareholders have in their possession *all* material information prior to a shareholder vote. *Arnold v. Society for Sav. Bancorp., Inc.*, 650 A.2d 1270, 1277 (Del. 1994).[7] This includes a fair summary of a financial advisor's analyses and the projections used in

[7] *See infra* note 8.

performing those calculations. *See In re Pure Res. Inc., S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002).

> [S]tockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely… [T]he disclosure of the banker's "fairness opinion" alone and without more, provides stockholders with nothing other than a conclusion, qualified by a gauze of protective language designed to insulate the banker from liability.
>
> The real informative value of the banker's work is not in its bottom-line conclusion, but in the valuation analysis that buttresses that result.

*Id.*

The Settlement provided BrightPoint's shareholders with the key inputs that enabled them to understand Blackstone's *Selected Companies Analysis*, *Illustrative Stand-Alone Discounted Cash Flow Analysis*, and *Selected Precedent Transactions Analysis* which the Board relied upon in recommending the Merger, thus—an important benefit, obtained without facing the risk and the expense of further litigation.

**c) Likelihood of Success, Complexity, Expense and Likely Duration of Litigation**

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763, at *43 (N.D. Ohio Sept. 1, 2011) (quoting *In re In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). As a result, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Brent,* 2011 U.S. Dist. LEXIS 98763, at *43 (citation and internal quotations omitted). Accordingly, courts have consistently held that "[t]he expense and possible duration of the litigation [should] be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See also Isby*, 75 F.3d at 1198-99 ("[There is] a number of factors

[that] have been consistently employed by the district courts to aid them in determining the 'fairness' of class action settlements [including] the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation."); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 340 (W.D. Pa. 1997) ("[I]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (citations omitted).

These considerations are fully applicable here. The primary focus in this case would have been the materiality of the ommitted information. The Action presents these (and other) complex issues, which after trial, would likely be followed by an appeal. Consequently, significant legal and financial resources would be expended in that effort. The Settlement obviates the need to litigate any of these issues and the concomitant expense. Thus, this factor supports approval of the Settlement.

Like other factors, this one seeks to measure whether a settlement is reasonable in light of known or perceived risks. *See, e.g.*, *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007) (although a court is not required to "decide the merits of the case or resolve unsettled legal questions," it cannot "judge the fairness of a proposed compromise" without "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement") (citation and internal quotations omitted); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 779 (N.D. Ohio 2010) ("A class action settlement may be particularly beneficial to the class if the risk of losing the case on the merits is high").

Nevertheless, if the litigation had continued, Plaintiffs would have faced a host of substantial risks. In connection with the motion to dismiss, Defendants asserted that Plaintiffs failed to specify each statement that was rendered misleading due to the omissions flagged in the

Amended Complaint, that the information sought in any case was not material under the Exchange Act as defined in *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976), and that the Amended Complaint failed to properly plead "loss causation" under *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). (Doc. No. 30). While Plaintiffs believed their claims had merit, they also recognized that the dissemination of the Disclosures remedied a substantial portion of their claims, and also alleviated the need for a battle of the experts, and any appeals resulting from a trial in this matter.

Without negating the strength of Plaintiffs' claims and legal arguments, the foregoing considerations demonstrate that ultimate success in the Action was by no means assured. As a result, analysis of this factor supports final approval of the Settlement.

#### d) The Presence of Collusion in Achieving the Settlement

A settlement should reveal that it is "the product of serious, informed, non-collusive negotiations." *Langendorf v. Conseco Senior Health Ins. Co.*, No. 08-CV-39142009, 2009 U.S. Dist. LEXIS 131289, at *25 (N.D. Ill. Nov. 18, 2009) (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). There is a presumption of good faith in the negotiation of class action settlements. *Id.* (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). *See also* 4 Alba Conte, et al., *Newberg On Class Actions* § 11:41 (4th ed. 2002) ("[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered."). Settlements that are the product of arm's-length negotiations are generally viewed as antithetical to collusion. *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 6, 2001).

Here, there is not even a hint of collusion between the parties or their counsel, and certainly no evidence of such behavior. Indeed, the docket in the *Collier* Action demonstrates

that this litigation was hotly contested and at times, contentious. As numerous courts have held, the timing of the settlement standing alone is no indication of collusion. *See, e.g.*, *Mars Steel Corp. v. Cont'l Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987) (finding no suggestion of collusion when settlement reached less than a year after suit filed by party to settlement). Moreover, Plaintiffs' Counsel have confirmed that agreement on the material terms of the Settlement were the result of strenuous, hard-fought and arm's length negotiations. *See* Monteverde Decl., ¶¶ 13, 14, 16, 26. Based on the foregoing, consideration of this factor supports approval of the Settlement.

**e) The Stage of The Proceedings and Amount of Discovery Completed**

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325. The consideration of amount of discovery seeks to gauge whether counsel have had access to sufficient information to evaluate the strength and weakness of their claims and to assess the adequacy of the settlement proposal. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021-22 (N.D. Ill. 2000) (noting that at the time of settlement, plaintiffs' counsel had analyzed the strengths and weaknesses of available claims and "had ample opportunity to reach an informed judgment concerning the merits of the proposed settlements").

Here, despite the fact that the Settlement was reached relatively early in the litigation, discovery took place on an accelerated and comprehensive basis, largely owing to the very nature of merger-related litigation. Thus, in the span of several weeks, Plaintiffs' Counsel conducted sufficient discovery, with their expert, and later interviewed and deposed key individuals to determine the adequacy of the Disclosures and other claims asserted in the

Complaint. Based upon this review and investigation, Plaintiffs' Counsel gained an adequate appreciation of the merits of the claims asserted and determined that the optimal result for the shareholders was for the Company to make the Supplemental Disclosures, enabling shareholders to make an intelligent, fully informed decision regarding the Transaction.

Accordingly, based on their investigation, discovery efforts and analysis of applicable legal principles, Plaintiffs and their counsel concluded that the Supplemental Disclosures, coupled with the disclosures already provided as a result of their litigation efforts, provided ample consideration for the Class to settle and release the claims in this lawsuit, given the totality of the claims asserted, the defenses thereto, and the substantial risks, costs and uncertainties of protracted litigation. By giving the Company's shareholders the opportunity to consider this additional information, the Settlement provided the Class with a significant benefit and all that was reasonably available under the facts and circumstances of the Action. *See In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 207 (Del. Ch. 2007) (noting the Court's preference for supplemental disclosure that provide shareholders with full information in advance of the vote because such a remedy "gives stockholders the choice to think for themselves on full information, thereby vindicating their rights as stockholders to make important voting and remedial decisions based on their own economic self-interest"); *see also In re Talley Indus., Inc. S'holders Litig.*, C.A. No. 15961, 1998 Del. Ch. LEXIS 53, at *46 (Del. Ch. Apr. 9, 1998) ("Indeed, the timely disclosure of the information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner

to inform stockholders' decision making process.").[8] Consideration of this factor likewise supports final approval of the Settlement.

### f) Opinions of Competent Counsel

"While the court, of course, should not abdicate its responsibility to review a class action settlement merely because counsel support it, the court is entitled to rely heavily on the opinion of competent counsel." *Armstrong*, 616 F.2d at 325 (citations omitted). In adjudging counsel to be "competent," the Court may rely on its own observations of the quality of representation provided by counsel as well as any affidavits highlighting the qualifications and accomplishments of counsel. *Isby*, 75 F.3d at 1200 (citations omitted); *see also Hispanics United*, 988 F. Supp. at 1170 ("This Court reiterates its belief that counsel for all parties are extremely competent. Their unanimously strong endorsement of the Decree is entitled to significant weight.").

In this case, both sides are represented by experienced litigators. And counsel for all parties have endorsed the Settlement. *See* Ex. 1, ¶¶ 30, 31. The Settlement agreed to by the parties was the product of extended arm's-length negotiations between these seasoned attorneys. Both sides zealously pressed their positions throughout the litigation process, and continued to do so while negotiating the language for their formal written agreement. *Id.*, ¶¶ 8-16. Thus, the

[8] Although the Company is organized under the laws of Indiana, courts in this State often look to Delaware on matters concerning corporate law, particularly where Indiana has had little opportunity to develop law on the subject and given Delaware's expertise in this area of law. *See, e.g., RMB Fasteners, Ltd. v. Heads & Threads Int'l, LLC*, No. 11 CV 02071, 2012 U.S. Dist. LEXIS 14361 (N.D. Ill. Feb. 7, 2012) ("Illinois courts are often guided by decisions of other jurisdictions, especially Delaware cases on corporate law issues."); *Fischbein v. First Chicago Corp.*, No. 97-CV-1989, 1998 U.S. Dist. LEXIS 2701, at *19 n.9 (N.D. Ill. Feb. 27, 1998) (applying Delaware law to deal with the corporate law issues). Moreover, Delaware frequently deals with corporate merger litigation attacking disclosures, and applies the same standard of materiality as does this Court. *See Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985) (A fact is material if a reasonable stockholder would consider it important in deciding how to vote.)

Court is entitled to rely heavily on the considered judgment of counsel for the parties that this Settlement represents a fair, reasonable, and adequate resolution of Plaintiffs' claims.

**g) The Amount of Opposition Expressed by Those Affected by the Settlement**

Although the reaction of a class to a settlement should be considered, the Court may approve a fair settlement over objections by some or even many class members, and despite criticism by some named plaintiffs. *EEOC v. Polycon Indus., Inc.*, No. 2:09-CV-141, 2011 U.S. Dist. LEXIS 117534 (N.D. Ind. Oct. 11, 2011). Indeed, even if a majority of the class were opposed to a settlement, this would still not "serve as an automatic bar to a settlement," as long as a "district judge, after weighing all the strengths and weaknesses of a case and the risk of litigation, determines [the settlement] to be manifestly reasonable." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1018 (S.D. Ohio 2001) (citation omitted).

Here, however, thus far, none of the class members opposed the Settlement. As of January 2, 2013, 17,864 Notices have been sent to individuals, brokerage firms and financial institutions. *See* Ex. 1, ¶ 27. The deadline for filing objections to the Settlement is January 20, 2013. *See id.* No objections have been filed to date. *See id.*

Based on the foregoing evaluation, the Court should find that the Settlement is fair, reasonable and adequate. Thus, the Settlement should receive the Court's final approval.

**B. The Conditionally-Certified Class Should be Finally Certified.**

The Court's Preliminary Approval Order conditionally certified the Class pursuant to the Stipulation. However, since then, nothing has occurred indicating that the Class does not meet

the requirements of Rules 23(a), (b)(1) and (b)(2). Accordingly, because this Action fully satisfies the relevant provisions of Rule 23, this Court should fully and finally certify the Class.[9]

### 1. The Class is Sufficiently Numerous

The "numerosity" provision of Rule 23(a)(1) requires that a class must be so numerous that joinder of all members is impracticable. When the proposed class is large, "numbers alone are dispositive." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986).

Numerosity is easily satisfied in this case. "There is no magic number required, and a plaintiff need not demonstrate the exact number of class members so long as a conclusion is apparent from good-faith estimates." *Nelson v. IPALCO Enters.*, No. IP 02-477-C H/K, 2003 U.S. Dist. LEXIS 26392, at *8 (S.D. Ind. Sept. 30, 2003); *see also Peterson v. H&R Block Tax Servs.*, 174 F.R.D. 78, 81 (N.D. Ill. 1997) (the court can use common sense tin evaluating numerosity); *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) (assuming that class of 60 would meet numerosity requirement). The proposed Class has tens of thousands of members. *See* Monteverde Decl., ¶ 17. This is sufficient to support a finding that the proposed Class satisfies the numerosity requirement of Rule 23(a)(1).

### 2. There are Common Questions of Law and Fact

The commonality requirement of Rule 23(a)(2) is satisfied here because this case presents questions of law and fact common to the proposed Class. "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)).

---

[9] In certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Nonetheless, all other prerequisites for class certification are met here.

"A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). Commonality does not require that all questions of fact or law be identical as long as "the class claims arise out of the same legal or remedial theory." *Johns v. DeLeonardis*, 145 F.R.D. 480, 483 (N.D. Ill. 1992); *accord Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (affirming class certification despite some variations: "common nuclei of fact are typically manifest where the defendants have engaged in standardized conduct towards members of the proposed class"); *Rosario*, 963 F.2d at 1017 (affirming class certification; "some factual variation among the class grievances will not defeat a class action" on commonality issue).

Plaintiffs satisfy this element by showing that there is "at least one question of law or fact common to the class." *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996) (calling commonality "a permissive standard" because "a single common issue is sufficient to satisfy the requirement."). As a result, "the commonality requirement has been characterized as a 'low hurdle' easily surmounted." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996) (quoting *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Here, there is no doubt that this action raises questions of law and fact common to the class. Specifically, whether the Company's initial disclosures in the Preliminary and Definitive Proxy Statements were sufficient is a question common to all of BrightPoint's shareholders. As such, it satisfies the commonality requirement with respect to the Class; and therefore, the second requirement of Rule 23(a) is satisfied.

**3. Plaintiffs' Claims are Typical of Those of the Class**

Rule 23(a)(3) requires Plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Plaintiffs satisfy the typicality

requirement because all members of the Class are victims of "a common course of conduct." *Scholes*, 143 F.R.D. at 185 (finding typicality where class representatives "were victims of the same fundamental scheme and that minor variation in factual circumstances are irrelevant").

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The key is whether a named plaintiff is a "member of the class" and "relies on the same legal theory" as the proposed class. *See Heastie v. Cmty. Bank*, 125 F.R.D. 669, 676 (N.D. Ill. 1989). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

The typicality requirement is closely related to the question of commonality but "focuses on the class representatives and whether their pursuit of their own claims will work for the benefit of the entire class." *Nelson*, 2003 U.S. Dist. LEXIS 26392, at *11 (citations omitted). *See also Rosario*, 963 F.2d at 1018; *Morris v. Risk Mgmt. Alts., Inc.*, 203 F.R.D. 336, 344 (N.D. Ill. 2001); *Arenson*, 164 F.R.D. at 664.

The alleged deficiencies in the Preliminary Proxy gave rise to Plaintiffs' claim that they were deprived of material information necessary to make the information disseminated not misleading, and ultimately, to make an informed decision on the Merger. The rights of all other BrightPoint shareholders were similarly affected. Plaintiffs' claims are based on the theory that Defendants' conduct violated the Exchange Act, which would be the same for all of the Company's shareholders. Under these circumstances, the typicality requirement is met.

**4. Plaintiffs and Their Counsel are Adequate**

The final requirement of Rule 23(a) seeks to determine whether the plaintiff, as representative of the proposed class, and his or her counsel, will fairly and adequately protect the

interests of the class. *See* Fed. R. Civ. P. 23(a)(4). The adequacy standard involves two elements. First, the class representative "must have a sufficient stake in the outcome to ensure zealous advocacy and must not have claims antagonistic to or conflicting with claims of other class members." *Ormond v. Anthem, Inc.*, No. 1:05-cv-1908-DFH-TAB, 2009 U.S. Dist. LEXIS 90837 (S.D. Ind. Sept. 29, 2009); *Hubbard v. M.R.S. Assocs, Inc.*, No. 1:05-cv-0218-DFH-TAB, 2008 U.S. Dist. LEXIS 102983, at *4 (S.D. Ind. 12-19-2008); *Nelson*, 2003 U.S. Dist. LEXIS 26392, at *23. Second, counsel for the named plaintiff "must be experienced, qualified, and generally able to conduct the litigation on behalf of the class." *Id.*

First, the interests of Plaintiffs here are aligned with those of the Class they seek to represent, as the factual and legal claims arise from the same course of conduct. The sufficiency of the Company's disclosures in the Preliminary Proxy and the Definitive Proxy, respectively, are the same for all members of the conditionally-certified Class. Indeed, to even be a member of the proposed Class, all must have held shares of BrightPoint's common stock between March 16, 2012 through the effective date of the Merger, as did Plaintiffs.

As to the second element, Plaintiffs are represented by reputable, experienced counsel. Rule 23(g)(1)(B) provides that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class." In evaluating proposed class counsel, Rule 23(g)(1)(C)(i) indicates that the Court should consider the work counsel had done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class.

Here, Plaintiffs' Counsel have extensive experience in handling class action litigation, and are and were fully qualified to prosecute the claims asserted in this action, having

successfully litigated many major class actions on behalf of hundreds of thousands of claimants. *See* Ex. 1, ¶ 30. Accordingly, the Court should find that Rule 23(a)(4)'s adequacy prong has likewise been met here.

**5. Certification of the Class Guards Against Inconsistent Rulings and the Injunctive Relief Applied Generally to the Class.**

The Class was conditionally certified pursuant to Rule 23(b)(1) and (b)(2). *See* Preliminary Approval Order, ¶ 1. The Class should now be finally certified on the same basis.

Rule 23(b)(1) authorizes a mandatory (*i.e.*, non-opt-out) class action where the subparts of Rule 23(a) are satisfied and "if prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

*Strunk v. Martin*, No. 1:10CV23 JD, 2011 U.S. Dist. LEXIS 23143, at *4-5 (N.D. Ind. Mar. 7, 2011) (quoting Fed. R. Civ. P. 23(b)(1)). *See also Stoll v. Kraft Foods Global, Inc.*, No. 1:09-CV-0364-TWP-DML, 2010 U.S. Dist. LEXIS 92930, at *21 (S.D. Ind. Sept. 6, 2010) ("Simply stated, if over 100 individual cases are tried, varying judgments are likely to ensue.").

This subsection of Rule 23(b) is intended to avoid "the prosecution of separate actions [that] could lead to inconsistent adjudications." *Stoll*, 2010 U.S. LEXIS 92930, at *21. Here, as described earlier, prior to the September 17, 2012 Consolidation Order, there were two pending actions in this Court. Thus, class certification pursuant to Rule 23(b)(1) is appropriate to guard against possibly differing rulings as to, *inter alia*, the adequacy of the Company's disclosures

and the duties of the Individual Defendants with respect to the Merger and whether it should be enjoined. *See id.* Thus, certification of the Class pursuant to Rule 23(b)(1) is proper here.

In addition, consistent with the Preliminary Approval Order, the Class should also be certified pursuant to Rule 23(b)(2), which provides for a mandatory class action "if ... the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification under this subsection is appropriate because Defendants' alleged misconduct was generally applicable to the Class as a whole, and the Amended Complaint sought to enjoin the Merger, which would affect the entire Class in the same way. *See, e.g., Uhl v. Thoroughbred Tech. & Telecomms. Inc.*, No. IP 0-1232-C B/S, 2001 U.S. Dist. LEXIS 13115 (S.D. Ind. Aug. 28, 2001) (certification pursuant to Rule 23(b)(2) was proper because defendants acted "on grounds generally applicable to the class"). Furthermore, the additional financial disclosures in the Definitive Proxy, which form the basis for the Settlement, benefitted all Class members equally and likewise support certification under Rule 23(b)(2). *See Stoll*, 2010 U.S. LEXIS 92930, at *21. Accordingly, a mandatory Class should be certified under Rules 23(b)(1) and 23(b)(2).

Based on the foregoing, pursuant to Rule 23(a), (b)(1) and (b)(2), the Court should fully and finally certify the Class conditionally certified by the Preliminary Approval Order.

### C. The Court Should Approve the Fee and Expense Award to Plaintiffs' Counsel

Pursuant to the Stipulation, and following arms' length negotiations between the Parties, Defendants agreed not to oppose an application by Plaintiffs for attorneys' fees and expenses in an amount not to exceed $600,000. As indicated above, this amount is separate from the benefit already conferred on the Class, does not impact the Class in any way and was negotiated at arm's

length with Defendants ***only after*** agreement was reached by the parties concerning all other terms, as set forth in the MOU.

Rule 23(h) expressly authorizes the Court to "award reasonable attorney's fees and nontaxable costs ... by the parties' agreement." Fed. R. Civ. P. 23(h). In this Circuit, courts calculate an appropriate attorney's fee in class actions by two methods: (1) the percentage of the benefit method; and (2) the lodestar method. *See, e.g., Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5336, 2011 U.S. Dist. LEXIS 115506 (N.D. Ill. Oct. 6, 2011) (using the percentage method); *Florin v. Nationsbank of Ga.*, N.A., 60 F.3d 1245, 1247 (7th Cir. 1995) (using the loadstar method). The determination of which method is appropriate in any given case will depend upon the particular circumstances of the case. *Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998); *In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001). Accordingly, based on this Circuit's precedent, the lodestar method will be used in cases where non-monetary benefits are obtained for the class. *See Langendorf*, 2009 U.S. Dist. LEXIS 131289 (citing *Charles v. Goodyear Tire & Rubber Co.*, 976 F. Supp. 321, 324-25 (D.N.J. 1997) (using lodestar method where the settlement provided for "equitable relief to address the alleged deceptive practices averred in plaintiffs' complaint") and *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (noting that a "court may select the lodestar method in some non-statutory fee cases where it can calculate the relevant parameters (hours expended and hourly rate) more easily than it can determine a suitable percentage to award")).

Under the lodestar method, the Court must first determine the "reasonable number of hours expended by the attorneys." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) ("'Reasonable' implies that the judge may reduce the hours if the number requested appears excessive compared to other cases or in light of the work."). Next, the Court "should determine

the reasonable hourly rate allowable for each attorney or class of attorneys involved in the case." *Id.* "These rates should be within the narrow bands of rates charged by attorneys of similar experience, competence and specialty." *Id.* Thus, attorneys' fees may include hourly billing for paralegals and law clerks, given that the prevailing practice in the community is to bill their time separately at market rates. *Missouri v. Jenkins*, 491 U.S. 274, 286-87 (1989). "Multiplying the hours reasonably expended by the reasonable hourly rates produces the lodestar." *Harman*, 945 F.2d at 974.

But this lodestar is only the first step in determining a reasonable fee under the lodestar method. In cases like this one, where counsel "had no sure source of compensation for their services," the Court must apply a risk multiplier to compensate the attorneys for the risk of nonpayment in the event the litigation was unsuccessful. *City of Greenville v. Syngenta Crop Prot., Inc.*, No. 3:10-cv-00188-JPG-PMF, 2012 U.S. Dist. LEXIS 151819, 21-22 (S.D. Ill. Oct. 23, 2012). To determine the appropriate multiplier, a district court must attempt "a retroactive calculation of the probability of success as measured at the beginning of litigation." *Cook*, 142 F.3d at 1013. "Multipliers anywhere between one and four, have been approved." *Harman*, 945 F.2d at 976 (citation omitted).

To determine the reasonableness of the sought-after fee, the courts will consider the following factors: 1) the value of the services on an hourly basis; 2) the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; 3) the fee customarily charged in the locality for similar legal services; 4) the results obtained; 5) the experience, reputation and ability of the lawyers performing the services; 6) whether the fee is fixed or contingent. *In re Pub. Serv. Co. Sec. Litig.*, 125 F.R.D. 480, 483 (S.D. Ind. 1988).

### 1. The Value of the Services on an Hourly Basis

Collectively, Plaintiffs' Counsel expended approximately 457.05 hours of attorney and paralegal time prosecuting the Action on behalf of the Class. *See* Exhibits E, F, G and H to Exhibit 1. Each of these exhibits contains a summary of the time spent by the attorneys and paralegals at each of Plaintiffs' law firms who worked on the Action, by hours expended, with their current hourly billing rates, as well as the costs and expenses for which payment is requested.

The work reflected was necessary, performed without duplication to the extent possible, and successfully resulted in the Settlement. As indicated, the regular hourly rates of Plaintiffs' Counsel multiplied by the number of hours expended results in a total lodestar of $245,573.75. *See* Exhibit 1, ¶ 28. *See generally Harman*, 945 F.2d at 974 (discussing lodestar calculation). Thus, Plaintiffs' Counsel's fee request represents a reasonable lodestar multiple of 2.44 which underscores the reasonableness of the requested fee.[10] Plaintiffs' Counsel's fee request also includes a request for payment of costs and expenses, which totaled $23,387.66, and which reduces the multiplier accordingly. *Id.*

### 2. The Novelty and Difficulty of the Questions Involved, and the Skill Requisite to Perform the Legal Service Properly

The claims asserted here involved complex factual and legal issues involving the application and interpretation of the federal securities laws, which in turn had a direct impact and

---

[10]This is in accord with case law from other courts, and Plaintiff's Counsel respectfully submit that the multiplier here would be considered reasonable in almost any jurisdiction in this country. *See Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 517 (6th Cir. 1993) (holding that the trial court did not abuse its discretion in awarding a multiplier of 3); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297 (D.N.J. 1995) (multiplier of 9.3); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (multiplier of 5); *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, PA.*, 778 F.2d 890 (1st Cir. 1985) (multiplier of 6); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998) (multiplier of 8.9 in a derivative action); *Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988) ("Most lodestar multiples awarded in cases like this are between 3 and 4"); *Fournier v. PFS Invs., Inc.*, 997 F. Supp. 828 (E.D. Mich. 1998) (recommending multiplier of 2); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) (approving multiplier of 3.7 in a derivative action); *In re Fine Host Corp. Secs. Litig*, No. MDL 1241, 2000 U.S. Dist. LEXIS 19367 (D. Conn. Nov. 8, 2000) (approving multiplier of 3.6).

required knowledge of complex valuation issues in a merger context, which Plaintiffs' Counsel were necessarily required to analyze and evaluate throughout the course of the Action. Plaintiffs' Counsel conducted an extensive factual investigation and analyses of BrightPoint's SEC filings and nonpublic financial information, as well as other public statements made by the Company through and by the Individual Defendants, together with news and analyst reports. Moreover, because of the inherent speed of merger-related litigation, Plaintiffs' Counsel were required to complete all of this legal, factual and financial investigation in an extremely compressed time frame.

Plaintiffs' Counsel had to evaluate the value of the proffered additional disclosures in light of the information being obtained through on-going discovery. Only after considering all available information did Plaintiffs and their counsel conclude that the additional disclosures set forth in the Definitive Proxy and Form 8-K provide ample consideration for the parties to settle and release the claims in this lawsuit, and provided an excellent result given the litigation risk in such complex merger-related litigation. The complexity of the Action supports the Court's approval of the Fee and Expense Award.

**3. The Fee Customarily Charged in the Locality for Similar Legal Services**

Where there is no local market for the litigation of the magnitude as this case, the courts in this Circuit will look into the national rates. *See, e.g., Wilfong v. Rent-A-Center*, No. 00-680-DRH, 2002 U.S. Dist. LEXIS 28016, at *20 (S.D. Ill. 2002). The only requirement is that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 896 (1984). A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate. *Id.* In light of the lack of comparable market in

Indiana, Plaintiffs' counsel have used hourly rates that are reasonable for their respective locations and for the level of skill, expertise and reputation of each of the lawyers involved. *See* Ex. 1, ¶ 29.

**4. The Results Obtained for the Class**

The Settlement unquestionably conferred substantial benefits on the Class in the form of additional, material disclosures provided to the Company's shareholders in advance of the vote on the Merger. These Disclosures, which Plaintiffs' Counsel obtained through its vigorous advocacy on behalf of the Class, furnished shareholders with critical information underlying the financial analyses conducted by Blackstone in support of its fairness opinion and enabled BrightPoint's shareholders to understand and assess Blackstone's financial analyses and decide how to vote on the Merger.

Moreover, while every case is unique and should be judged on its own merits, the requested Fee and Expense Award of $600,000 is well within the range of awards in similar merger or "deal" cases where the settlement consisted mainly, if not solely, of supplemental disclosures in company filings. For example, other recent fee awards in merger-related actions alleging inadequate disclosures support the agreed-upon Fee and Expense Award requested here. *See In re ICX Techs., Inc. S'holder Class Action*, Consol. C.A. No. 1:10-cv-941 (E.D. Va. Jul. 8, 2011) (awarding $925,000.00 in fees and expenses for additional disclosures and fifteen day extension of appraisal rights) (attached as Exhibit I to Ex. 1); *Nichting v. DPL, Inc.*, No. 3:11-cv-141 (S.D. Ohio Feb. 24, 2012) ($700,000 for disclosure-only settlement) (attached as Exhibit J to Ex. 1); *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010) ($3.5 million for disclosure-only settlement) (attached as Exhibit K to Ex. 1); *Cnty. of New York Emps. Ret. Plan v. Merrill Lynch*, C.A. No. 4066-VCN (Del. Ch. Aug. 31, 2009) ($950,000 for disclosure-only settlement) (attached as Exhibit L to Ex.

1); *Henkel v. Gemstar-TV Guide Inc.*, C.A. No. 3419-VCN (Del. Ch. Dec. 16, 2008) (awarding $1.1 million in fees and expenses for additional disclosures) (attached as Exhibit M to Ex. 1); *In re The Trizetto Grp., Inc. S'holders Litig.*, C.A. No. 3694-VCN (Del. Ch. Dec. 4, 2008) ($950,000 for disclosures- and proportional voting provision agreement) (attached as Exhibit N Ex. 1).[11]

Therefore, the non-economic benefit conferred on BrightPoint's shareholders merits approval of the Fee and Expense Award. Indeed, the full benefit of the Settlement achieved in the Action—the additional disclosures included in the Definitive Proxy in advance of the shareholder vote on the Merger which Plaintiffs alleged had been omitted—has already been provided to each member of the Class, and the fees and expense payments that are now being sought will not diminish at all the benefit received by Class members. Rather, by agreement, the payment will come entirely from Defendants. Thus, as distinguished from a traditional common fund case where the fee and expense payment, as awarded by the court, comes from the common fund before distribution of the settlement proceeds to class members, the Fee and Expense Award will not diminish in any way that the Class members have already received in the form of the Merger consideration.

**5. The Experience, Reputation and Ability of the Lawyers Performing the Services**

It took considerable skill to achieve the Settlement. To successfully pursue the Action, Plaintiffs' Counsel had to possess expertise in the corporate law governing the fiduciary duties of officers and directors, as well as the knowledge to distill and analyze facts giving rise to Plaintiffs' claims from thousands of pages of documents. The combined talents of Plaintiffs' Counsel allowed them to advance claims and theories of liability to pursue the Action, obtain the

[11] *See supra* note 8.

information they needed to analyze the strength and weaknesses of these claims and bring Defendants to the negotiating table, all to the benefit of BrightPoint's shareholders with the vote on the Merger fast approaching. Through their efforts, Plaintiffs' Counsel provided the Company's shareholders with previously undisclosed material information.

The efforts of Plaintiffs' Counsel were not conducted in a vacuum. Aligned against them were some of the most prominent defense counsel in the country, equally knowledgeable of Delaware and Indiana law and fully capable of capitalizing on any misstep or weakness, who could draw upon the exceptional resources of their well-regarded regional and national law firms. The skills and abilities of defense counsel are factors that may be considered in evaluating a fee request. *See, e.g., In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008). Consequently, based on the foregoing, the Fee and Expense Award should be approved.

**6. The Contingent Nature of the Fee**

Plaintiffs' Counsel accepted this case on a contingency fee basis and, therefore, they have received no compensation during the course of this Action, although they incurred expenses in prosecuting the claims for the benefit of the Class. This factor should be considered in evaluating the reasonableness of the Fee and Expense Award. *See, e.g., Florin*, 34 F.3d at 565; *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). Because of the contingent nature of the representation in the Action, any award of fees and expenses to Plaintiffs' Counsel has always been at risk and completely contingent on the result achieved (as well as on the exercise of this Court's discretion in making any award). Moreover, the appearance of Plaintiffs' Counsel in this

case precluded them from engaging in other lucrative work.[12] These factors fully support the Court's approval of the Fee and Expense Award.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Settlement, certify the Class, and award the requested Fee and Expense Award.

Dated: January 16, 2013

Respectfully submitted,

**PRICE WAICUKAUSKI & RILEY, LLC**

*/s/ Henry J. Price*
Henry Price (Atty. No. 5822-49)
hprice@price-law.com
Carol Nemeth Joven (Atty. No. 18091-53A)
cnemeth@price-law.com
The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN 46204
Tel: (317) 633-8787
Fax: (317) 633-8797

[12] Delaware courts, which more frequently face litigation such as this, fully recognize the significance of a contingency fee arrangement when considering fee awards. *See, e.g.*, *Chrysler Corp. v. Dann*, 223 A.2d 384, 389 (Del. 1966); *Seinfeld v. Coker*, 847 A.2d 330, 333-334 (Del. Ch. 2000); *Franklin Balance Sheet Inv. Fund v. Crowley*, C.A. No. 888-VCP, 2007 Del. Ch. LEXIS 133, at *38-39 (Del. Ch. Aug. 30, 2007) ("Fee awards should encourage future meritorious lawsuits by compensating the Plaintiff's attorneys for their lost opportunity cost (typically their hourly rate), the risks associated with the litigation, and premium."); *In re Vitalink Commc'ns Corp. S'holders Litig.*, No. 12085, 1991 Del. Ch. LEXIS 195, at *51 (Del. Ch. Nov. 8, 1991) ("[i]n all fairness, the contingent nature of [counsel's] fee agreement demands a higher fee for [counsel's] work"); *In re Plains Res. Inc. S'holders Litig.*, C.A. No. 071-N, 2005 Del. Ch. LEXIS 12, at *22 (Del. Ch. Feb. 4, 2005) ("[T]he plaintiffs' counsel were all retained on a contingent fee basis, and stood to gain nothing unless the litigation was successful. It is consistent with the public policy of Delaware to reward this risk-taking in the interests of shareholders."). In *Globis Capital Partners v. Safenet*, No. 2772-VCS (Del. Ch. Dec. 20, 2007), the court awarded a fee of $1.2 million, which equated to approximately $1,500 per hour, in a disclosure-only settlement, reasoning: "you need to reward people who took real risk and hit a home run ... [W]hen you look at this particular situation, it's clear that the Plaintiff really did achieve substantial disclosure." *Id.* at 34, 44, 49.

***Of Counsel:***

**FARUQI & FARUQI, LLP**
Juan E. Monteverde
jmonteverde@faruqilaw.com
Shane Rowley
srowley@faruqilaw.com
369 Lexington Avenue,10th Floor
New York, NY 10017
Tel: (212) 983-9330
Fax: (212) 983-9331

**ROBBINS GELLER RUDMAN & DOWD LLP**
Randall J. Baron
A. Rick Atwood, Jr.
David T. Wissbroecker
Edward M. Gergosian
655 West Broadway, Suite 1900
San Diego, California 92101
Tel: (619) 231-1058
Fax: (619) 231-7423

**PARR RICHEY OBREMSKEY FRANDSEN & PATTERSON**
Travis W. Montgomery
Capital Center South
201 North Illinois Street, Suite 300
Indianapolis, Indiana 46204
Tel: (317) 269-2500
Fax: (317) 269-2514